JOHNSON, Appellant, vs. TOWN BOARD OF WYOCENA, Respondent.

*December 4, 1941—January 13, 1942.*

*Arthur W. Swanson* of Portage, for the appellant.

For the respondent there was a brief by *Rogers & Owens* of Portage, and oral argument by *Philip Owens* and *Bruce Rogers.*

WICKHEM, J.   No issue of facts is involved in this appeal. Plaintiff is a tavern keeper.   At the spring election of 1940, the voters of the town of Wyocena voted favorably to issuing licenses for the retail sale of intoxicating liquor and beer in the town.   Licenses were duly issued and plaintiff received one of the licenses.   On April 1, 1941, another referendum was had and the voters voted against the issuing of retail beer and liquor licenses.   In May, 1941, plaintiff, pursuant to chs. 66 and 176, Stats., applied for a Class "B" license for the retail sale of beer and intoxicating liquor for the year beginning July 1, 1941.   On June 16, 1941, defendant met and considered the application and refused to issue the license solely because the township had voted against the issuance of such licenses.   Immediately thereafter appellant commenced an action in circuit court in which the election of 1941 was adjudged void, (1) because a similar election had been held the previous year, and (2) because the election was not sufficiently noticed.   On July 14, 1941, the town board again denied plaintiff's license assigning the same reason as that which prompted its earlier denial.   The question is whether the town board had power to refuse plaintiff a license for reasons wholly unconnected with his fitness merely because it considered that no licenses should be granted in view of the community sentiment.   Sec. 66.05 (10) (d) 3 provided in 1933:

"The electors of any city, village or town may, by ballot, at the spring election, determine *that no license* shall be issued. . . ."

In 1939 this subsection was amended by providing that the electors in the spring election may determine *"whether or not"* Class "B" retail licenses shall be issued.   The section continues:

". . . Such result shall remain in effect for a period of two years and thereafter until changed by ballot at another election held for the same purpose. . . ."

In 1933 division 2 of section 66.05 (10) (d) provided that town boards—

"shall have the power, but shall not be required, to issue licenses. . . ."

No change has been made in this section since.

It is plaintiff's position that in 1933, following the repeal of the Eighteenth amendment, the legislature initiated the policy of vesting power in the governing body of the town to grant licenses, subject to the provision that the electors might determine that no licenses should be issued; that in 1939 the legislature introduced a new policy by committing to electors, where an election is had, the power to determine not merely that no licenses shall be issued, but that they should be issued, the results of the election to remain in force for a period of two years and thereafter unless changed by ballot at another election.

Plaintiff's case therefore turns upon whether the legislature intended by the 1939 amendment to enlarge the scope of the referendum and correspondingly to diminish the legislative powers of the town board. This, in turn, depends on whether there is such a difference between the earlier permission to the electors to determine *that no licenses should be issued* and the later permission to determine *whether or not licenses shall be issued.* It is plaintiff's contention that the term "whether or not" plainly commits to the electors full decision as to the policy to be pursued with respect to licenses; that if the vote is affirmative the town board for the next two years has no power to consider or determine the general policy of the town with respect to issuing licenses and that it is without power to deny them upon any such consideration of general policy.

Defendant, on the other hand, claims that sec. 66.05 (10) (d) 2, Stats., was not repealed and that under that section town boards have the power, but are not required, to issue licenses; that the term "whether or not" is no broader than the phrasing of the earlier version of sec. 66.05 (10) (d) 3.

This case has given us some difficulty but we conclude that the trial court correctly construed the statutes. We shall briefly state the reasons for this conclusion:

. The term "whether or not," when used in a referendum law in respect of issuing liquor licenses, had had a long period of use prior to the legislation following the repeal of the Eighteenth amendment. Thus, by sec. 1, ch. 521, Laws of 1889, which appears to have been the first referendum law on this subject, the voters were given the power to determine "whether or not" any person shall be licensed. Under this law, questions submitted were "for" license and "against" license, and the law provided that if the vote was "against" license "no license . . . be granted." It was provided that a license issued in violation of the vote was void. It provided, however, "if a majority . . . be 'for license' then it shall be *lawful* . . . to grant license." In 1898 sec. 1565 (b), defining the effect of an election, provided in substance that if the vote upon a referendum was "no," no license could be issued. But if the vote was "yes" it would *"be lawful"* to grant a license. Sec. 926—2, Stats., Supp. 1899–1906, had provisions empowering territory annexed to municipalities to remain dry by petition until the holding of a referendum. It is provided to be *unlawful* for the common council of the city to grant liquor licenses unless the majority of the votes of the electors shall favor the granting of such licenses. Sec. 176.22, Stats., now in effect, deals with remonstrances and counterpetitions in license districts and prohibits the granting of a license within any residence district if the majority of the qualified electors present a remonstrance objecting to the granting of a license "until a counterpetition signed by a majority of said electors . . . praying that such license may be granted . . . shall be filed . . . when *it shall be lawful* for the proper authorities to issue license in said district."

Thus, the history of legislation in this state shows that a referendum on the question "whether or not licenses were to

be issued" has always been considered to foreclose the town board from granting licenses if the response of the electors was "no" and to save unaffected its powers to deny or grant when the electors voted "yes." After the repeal of the prohibition amendment liquor laws were written into the statute and are found in ch. 176, Stats. (ch. 13, Laws of Sp. Sess. 1933). Old local option, remonstrances, and counterpetition laws all found their way back into the statutes. Sec. 176.38, Stats., contained from the start the words "whether or not." Sec. 66.05 (10) (d) 3 slightly varied the language by permitting the electors to determine that "no license shall be issued." It is a fair assumption that the amendment to sec. 66.05 (10) (d) 3 in 1939 was to conform this section to sec. 176.38 which had definite and well-understood meaning under the earlier statute.

In any event, it was not the purpose of the legislature, in making this change, to vest in electors the full determination of town policy with respect to licenses. The electors, by a negative vote, may deprive the town board of power to grant licenses, but an affirmative vote is a mere authorization and leaves unimpaired the provisions of sec. 66.05 (10) (d) 2 giving the town board the power, but not requiring them to issue licenses. The provision that the result of the election remain in effect for a period of two years thereafter until changed by ballot is in no way in conflict with this. Whatever the result of the election is, it stays in effect for two years. If the vote is "for license" the town board may license during the following two years. If the vote is "against license" the board may not license for a period of two years. It follows that the town board, upon any consideration deemed by it importantly bearing upon the question, could deny or grant licenses in the exercise of its legislative powers, and that plaintiff has no standing to demand a license.

*By the Court.*—Judgment affirmed.