STATE EX REL. EDGE, Appellant, vs. MEYER and others, Respondents.

*June 4—June 22, 1946.*

For the appellant there was a brief by *Lee & Becker* of Madison, and oral argument by *Lester C. Lee.*

For the respondents there was a brief by *Hill, Miller & Hill* of Baraboo, attorneys, and *Hill, Beckwith & Harrington* of Madison of counsel, and oral argument by *John T. Harrington.*

FRITZ, J.   In the relator's petition for a writ of *mandamus,* he alleged that on August 13, 1945, he applied to the village board of Sauk City for the transfer of his Class B liquor license, —which was issued to him on June 27, 1945, under secs. 66.05 and 176.05, Stats., and authorized him to sell intoxicating liquor at 817 Water street in the village,—to a new location in the village.   He also alleged that the board on August 13, 1945, denied his application without a hearing, and that at his request a further hearing and consideration on his application for the transfer was had on August 27, 1945, when the board again denied the application for reasons stated in a letter dated August 30, 1945, as follows:  Moving from business street into outlying district, necessitating daily police patrol; objection of residents in district where transfer is asked for; public attitude in general being against a transfer; protection of present location for future licensing.   The relator alleged that those reasons are not sufficient in law for a denial of the transfer and are not the real and personal reasons why it was denied; that the question of police patrol is a matter for the village board to furnish to the residents of the village; that the residents in the district where the transfer was asked were not opposed to the transfer; that there was no public hearing and no objections were made by the public in general against such a transfer; and that the board of Sauk City has no authority to protect the owners of the property at the present location, thereby allowing their personal interest to interfere with their public duty.

In their return to the writ, the members of the board alleged "that the location to which the relator has petitioned for the transfer of his license, is outside of the business district of the

village, . . . is located near the western border of said village in a residential district and that it would not be in the public good nor reasonably possible to maintain peace and order or extend police supervision to a location so far removed from the business district of the village." And in an affidavit filed in support of the motion for summary judgment, Henry Dresen, the village clerk, stated that in relation to relator's application for the transfer, it is recited in the official minutes of the board's meeting on August 27, 1945, that—

"After giving more than an hour for discussion during which President Meyer asked each individual board member their opinion and objections, they all unanimously agreed that the transfer should not be granted for the following reasons: Moving from business district into outlying district, necessitating daily police patrol, objections of residents in district where transfer to is asked for, public attitude in general being against transfer, also protection of present location for future licensing."

And Dresen also stated: "That Water street in Sauk City is the street upon which the business establishments of the city are practically all located and is in fact the only street in the village which might be considered the business district; that all of the licensed Class B taverns in Sauk City are located in Water street and . . . the village police patrol is normally confined to the Water street area."

And a village map, which is attached to Dresen's affidavit, demonstrates what the board refers to as the "outlying district," and also shows the distance it is removed from the business district where saloons are now located and where the police patrol is maintained.

The trial court, in granting the motion for summary judgment, stated—

"In the matter now before us, it is our opinion that one question of law is determinative of the merits of the case; accordingly, that it is unnecessary and would be futile to try out the issues of fact. . . . The board refuses [to permit trans-

fer] upon the ground, among others, 'moving from business district into outlying district.' We believe that the board has acted within its discretion in refusing the transfer, for this reason given—without going into the others offered by the board. . . . If the village board of Sauk City does not feel that taverns should be permitted in outlying districts, we do not conceive that the court has power to say that the board is wrong, as a matter of law. It may well be that especially in a small village, the police personnel is limited. There may be no squad car to patrol the district. But, regardless of any such consideration, if the village board desires to concentrate all the taverns in a particular district, it seems to us that it is acting within its lawful power in so doing. An owner of a tavern has no inherent right to have his tavern license transferred to a place of his own choosing, anywhere within a community. To be sure, if all that he asked was that the license be transferred to premises next door, or in the same business block, then the board's refusal might be characterized as arbitrary and capricious. . . . It seems to us to be well within the lawful power of a village board to concentrate taverns in a given district. With that policy, the courts—as we view it—have no concern."

On this appeal the relator claims that in trial court the case was presented entirely on the propositions that the new location is outside of the business district of the village and near the western border of the village in a residential district, and that it would not be in the public good nor reasonably possible to maintain peace and order, or extend police supervision to a location so far removed from the business district of the village. And the relator contends those are the facts at issue and did not in truth exist, and these were issues of fact which should have been tried by the court because they were substantial; and that these facts were not sufficient in law to deny the transfer, and other reasons existed for the denial; that the board's only reason for the denial was to protect the present location for future licensing, and the law does not recognize any such priority right; and that defendants did not use discretion in arriving at their conclusion, but acted arbitrarily

and capriciously, and the relator is entitled to show on a trial that the defendants acted arbitrarily and capriciously and beyond their discretionary power in denying his application, and that therefore the motion for the summary judgment should have been denied.

These contentions on behalf of the relator cannot be sustained. Although the board's denial of the transfer, at its meeting of August 27, 1945, was for three reasons noted in the minutes in addition to the reason, "moving from business district into outlying district, necessitating daily police patrol," that reason alone was sufficient to warrant and sustain the denial regardless of whether there was any basis in fact or law for those other reasons. The above-mentioned uncontroverted facts as to matters which are stated in the return and Dresen's affidavit and appear from the attached village map,— definitely established the board's allegations and warrant the conclusion in its return that,—

"the location to which the relator has petitioned for the transfer of his license, is outside of the business district of the village . . . is located near the western border of said village in a residential district and that it would not be in the public good nor reasonably possible to maintain peace and order or extend police supervision to a location so far removed from the business district of the village."

Consequently there was presented the crucial question as to suitability under those circumstances of the new location to which relator sought the transfer of the license; and in the determination of this question by the board there was involved a matter of local policy which it was within its province and discretion to decide as it did. And, as respondents contend, that decision was warranted by the above-stated uncontroverted facts alleged in respondents' return and stated in Dresen's affidavit, regardless of the other reasons which are also stated in the board minutes.

Under the clause in sec. 176.05 (14), Stats., that "every license . . . *may* . . . be transferred by the proper issuing authority from one premises to another . . . but no licensee shall be entitled to more than one transfer in any one license year," a licensee has no absolute right to have his license transferred to another place of business of his own choosing anywhere in the municipal community. The term "may," as used in that clause is not mandatory. Its evident meaning and purpose is to empower—but not to require—a municipal council or board to authorize such a transfer; and that meaning is not altered or affected by the use of the word "entitled" in the subsequent clause in that sub. (14), "but no licensee shall be entitled to more than one transfer." The evident purpose of that clause is to limit to but one transfer the exercise by the licensing authority of its power under the authorization in the preceding clause that the license "may . . . be transferred by the proper issuing authority."

In relation to the discretion of a municipal council or board in the exercise of its power under the provision in sec. 176.05 (14), Stats., that "every license or permit issued pursuant to this chapter or subsection (10) of sec. 66.05, *may* . . . be transferred by the proper issuing authority from one premises to another," there are applicable the following conclusions stated in *State ex rel. Higgins v. Racine*, 220 Wis. 107, 110, 264 N. W. 490, in relation to the provision in sub. (1) of sec. 176.05, that such council or board *"may* grant retail licenses," etc., to wit:

"Our statute, sec. 176.05 (1), permits, but does not require officials situated as are respondents to grant, in any and all cases, licenses for the sale of intoxicating liquors. Under conditions and restrictions not necessary to mention here, the common council may grant such licenses to such persons entitled to a license under the law 'as they deem proper to keep places within their respective towns, villages, or cities for the sale of intoxicating liquors.' When a license is sought, an application must be made describing the individual and the

location concerned, notice must be given thereof, and of the 'name and address of the applicant . . . and *the location of the premises* to be licensed.' The members of the common council of the city, acquainted with the problem of licensing the sale of intoxicating liquor, *are required to exercise discretion* in dealing with each case. *The situation of the proposed tavern becomes of importance,* and *must be considered* in determining whether or not a license is to issue. Under the evidence submitted, the trial court's decision that the common council did not act arbitrarily and without legal reason is sustained. The premises where appellant sought to establish a tavern are in a neighborhood where no other tavern exists. There are places of amusement for children and others near the proposed location. The usual shopping facilities of a residential neighborhood are present, but no other taverns are within a considerable distance of this place. The common council was of the opinion that the welfare of the community could be served only by denying the application. A *mandamus* cannot be granted to compel a common council to issue a license where the council, acting within its province, has exercised its discretion, nor can such a writ issue unless the applicant can show a clear right to the relief sought." See also *Johnson v. Town Board,* 239 Wis. 461, 465, 1 N. W. (2d) 796; *Rawn v. Superior,* 242 Wis. 632, 636, 9 N. W. (2d) 87.

It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.