BRUCE E. SCHROEDER, District Attorney, Kenosha County
You have requested my opinion on the following question.
 Can an Alderman who holds a Class "B" Fermented Malt Beverage and Liquor License vote on the granting of, renewal *Page 546 
of, or revocation of a Class "B" Fermented Malt Beverage and Liquor License of a new applicant or current licensee?
It is often said that the tavern owner is all things to all people. Certainly, much legislation is developed in the atmosphere of this friendly host — but it is my duty to limit his influence under the law as it relates to this issue. I have concluded that your inquiry must be answered in the negative.
In this regard, you have referred to 24 OAG 292 (1935), an opinion dealing with this issue and ask whether it continues in force. In relevant part, 24 OAG 292 concludes that:
 ". . . the granting of a liquor license partakes of the nature of a judicial proceeding and one who is a party in interest to the petition to be heard, or who will be affected financially directly or indirectly by the allowance or disallowance of the petition, cannot be a fair and impartial judge and hence cannot be allowed to act in the case. It is against public policy to have an officer profit by his office at the expense of the public or to use his office to fight competitors of his private business."
This opinion merely restated a common law rule of long standing and has been reaffirmed in the ensuing years. The Wisconsin Supreme Court first enunciated the rule in The Board ofSupervisors of Oconto County v. Hall (1879), 47 Wis. 208,2 N.W. 291, whereby the court ruled that two county board supervisors, who were sureties for the county treasurer, who had embezzled county funds, were barred from voting on the acceptance of partial restitution from the treasurer which would have the effect of substantially diminishing their liability as sureties, the court saying:
 "The general rule of the common law is, that members of a legislative body or municipal board are disqualified to vote therein on propositions in which they have a direct pecuniary interest adverse to the state or municipality which they represent. The rule is founded on principles of natural justice and sound public policy. Perhaps the only recognized exception to this rule is the case where the body or board is permitted to fix the compensation of its members." Board v. Hall, supra at p. 213. *Page 547 
24 OAG 292 was the culmination of a series of opinions dealing with potential conflicts between an alderman's roles as legislator and licensee. [See 5 OAG 686 (1916), 6 OAG 461 (1917), 23 OAG 191 (1934).] Subsequently, it was adhered to in 28 OAG 228 (1939) wherein it was noted that although an alderman-licensee would be barred from voting on liquor license applications, mere status as an alderman did not make one ineligible to hold a liquor license or vice versa.
The application of the rule disqualifying members of a council or other body from acting in a matter in which they are personally interested appears to depend upon whether such body is acting in a judicial or legislative capacity. 133 A.L.R. 1257, 1260. The distinction has been stated as follows:
 ". . . a legislative act must be regarded as one which prescribes a general rule of conduct, while a judicial act is one which imposes burdens or confers privileges in specific cases, according to the finding of some person or body, whether the facts exist which make a general rule applicable to the specific case, or according to the discretionary judgment of such person or board as to the propriety of imposing the burden or granting the privilege in a specified case. An ordinance prescribing the conditions upon which streets should be laid out or improved and the procedure to be adopted in accomplishing these purposes would, I suppose, be clearly legislative in character. An ordinance, however, laying out a particular street, or ordering it to be paved, would be judicial in its quality." State, West Jersey Traction Co., Prosecutors, v. Board of Public Works (1894), 56 NJL 431, 29 A 163.
Similarly, for example, a town board taking up the general question of whether to extend the hours for the sale of beer and liquor during months of daylight saving time, would be exercising a legislative function while it would be functioning as a quasi-judicial body in considering the issuance of a Class "B" license to an individual applicant. You have suggested that the Supreme Court has reached a contrary result in Johnson v. Town Board
(1942), 239 Wis. 461, 1 N.W.2d 796. Any such indication inJohnson, supra, is dicta, the issue there being simply whether a town board had the discretionary power to deny a license application when the applicant *Page 548 
was statutorily qualified and the town's license quota was not filled. In answering the question affirmatively, the court said:
 "It follows that the town board, upon any consideration deemed by it importantly bearing upon the question, could deny or grant licenses in the exercise of its legislative powers, and that plaintiff has no standing to demand a license. Johnson v. Board, supra, at 465."
The court did not take up the issue of whether the licensing procedure was a legislative or quasi-judicial function. Such a passing characterization of the general nature of a town board's powers is in no way a holding that a municipal governing body, passing on liquor license applications, is exercising a legislative rather than a quasi-judicial function.
The principle enunciated above and in 24 OAG 292 is equally applicable whether the issue before the licensing body is the granting, renewal or revocation of a license.
24 OAG 292 and 28 OAG 228 have been on the books for nearly forty years, and many intervening sessions of the legislature, and are thus entitled to deference. State ex rel. West Allis v.Dieringer (1956), 275 Wis. 208, 219, 81 N.W.2d 533; State v.Ludwig (1965), 31 Wis.2d 690, 698, 143 N.W.2d 548. The legislature has not seen fit to repudiate these opinions and has, in fact, reiterated their sound public policy underpinnings by the passage of ch. 90, Laws of 1973, a Code of Ethics for State Public Officials. At sec. 11.05 (2) of the code, the legislature has provided that "No state public official may use his public position or office to obtain financial gain for himself or his immediate family, or for any business with which he is associated." At sec. 11.05 (11) (c), it is further provided that "The legislature recognizes that all state public officials should be guided by a code of ethics and thus: . . . (c) Counties and municipalities may and should establish a code of ethics for local public officials."
For the above stated reasons, the opinions expressed at 24 OAG 292 and 28 OAG 228 are to be adhered to in reference to the inquiries you have made.
VAM:DN *Page 549