Mark ALBERTI, d/b/a The Woodshed Tavern, Petitioner-Respondent,†

v.

The CITY OF WHITEWATER, a municipal corporation, and Common Council of the City of Whitewater, Roy A. Nosek, Alvin Obenauer, Ruth Miner, Kenneth J. Foucault, James Fischer, Thomas S. McLeroy, Gerald S. Schroble and Brian Schimming, individually and as members of The City of Whitewater Common Council, Respondents-Appellants.

Court of Appeals

*No. 81–2510. Submitted on briefs July 19, 1982.—*
*Decided November 4, 1982.*
(Also reported in 327 N.W.2d 150.)

† Petition to review denied.

For the respondents-appellants the cause was submitted on the brief of *Martin W. Harrison* of *Allen, Harrison & Williams* of Whitewater.

For the petitioner-respondent the cause was submitted on the brief of *Richard E. Reilly* of *Gimbel, Gimbel & Reilly* of Milwaukee.

Amicus curiae brief was filed by *Burt P. Natkins,* Madison, for League of Wisconsin Municipalities.

Before Voss, P.J., Scott, J. and Lewis J. Charles, Reserve Judge.

SCOTT, J. The City of Whitewater (Whitewater) and the Common Council of Whitewater (Council) appeal from a judgment finding that the Council has no discretion to control the expansion of a licensed tavern's premises and from a writ of mandamus ordering the city clerk to license an expansion of the Woodshed Tavern (Woodshed) and to report the license amendment to the Council. The question on appeal is whether a tavern operator who has been issued a one-year license to sell intoxicants on specifically described premises may alter his license without the approval of the issuing authority. Mark Alberti, operator of the Woodshed, contends that sec. 176.14, Stats., allows him to expand the premises on which he is licensed to sell intoxicants by merely informing the issuers of his original license that his business premises no longer conform to those for which the license was granted. We find that sec. 176.14 requires a

liquor licensee to report to the issuing authority any change in the facts set out on his application for the purpose of facilitating government monitoring of liquor sales and that the statutory duty to report in no way diminishes the power of a license issuing authority or any other agency responsible for the regulation of liquor sales. We further find that whenever a licensee proposes to expand the size of the premises described on his license, the proposed change is analogous to a request for a transfer from one premises to another, and the license issuing authority has discretion to approve or disapprove of the proposed expansion. Accordingly, we reverse the judgment and order.

In 1976, Alberti received a Class B license from the Council to sell liquor and beer on the 18′ × 113′ first-floor premises of the Woodshed at 145 West Main Street in Whitewater. The Council renewed Alberti's license for those premises annually thereafter.

In March 1981, the building next to the Woodshed went up for sale, and Alberti began to consider expanding his premises. He tentatively planned to acquire 143 West Main Street and to cut through the wall between that structure and the Woodshed building, thereby doubling the size of his tavern.

On April 10, 1981, Alberti asked the Council to renew his Class B license for the original Woodshed premises: 18′ × 113′ on the first floor at 145 West Main. The Council granted Alberti's request for a renewal, and on July 2, 1981, the Whitewater city clerk issued a one-year Class B license to Alberti for the sale of liquor and beer on the specific floor space described in his renewal application.

On June 22, 1981, Alberti entered into an agreement to purchase the building at 143 West Main Street. On July 29, 1981, he notified the city clerk that he wanted to amend his liquor license by adding the premises at 143 West Main to the premises at 145 West Main. On August 18 and September 15, 1981, the Council consid-

ered Alberti's request for a license amendment. Subsequently, the Council informed Alberti that it did not approve the addition of the premises at 143 West Main to the already licensed Woodshed premises. The Council explained its refusal to amend Alberti's license by saying that the city already had difficulty controlling tavern patrons in the vicinity of the Woodshed and that expansion could have a negative effect on retail businesses in the area.

In October 1981, Alberti sought review of the Council's action in the circuit court. The trial court held that the case was controlled by sec. 176.14, Stats., and determined that that provision gave the Council no discretion to pass on the expansion of the licensed premises. Accordingly, the court issued a writ of mandamus ordering the city clerk to add the premises at 143 West Main to Alberti's license and to report the change to the Council.

The issue before us on appeal is whether the Council had authority to deny Alberti's request for an expansion of his licensed premises. We note at the outset that had Alberti wished to transfer his entire operation from the premises at 145 West Main to the premises next door at 143 West Main, this case would not be before us. A licensee has no absolute right to transfer his license to another place of business of his own choosing. *State ex rel. Edge v. Meyer,* 249 Wis. 154, 159, 23 N.W.2d 599, 601 (1946). Under sec. 176.05(14), Stats., a municipal council is empowered but not required to authorize the complete relocation of premises. *Id.* Mandamus will not lie to compel a public agent to perform an act unless the party seeking the writ has a clear right to relief and the duty sought to be enforced is positive and plain. *Law Enforcement Standards Board v. Village of Lyndon Station,* 101 Wis. 2d 472, 493–94, 305 N.W.2d 89, 99–100 (1981). Since a liquor license holder has no absolute right to transfer his license to a new business location

and since a common council has discretion to act on a request for transfer, mandamus will not lie to compel a common council to approve a license transfer. *See Edge,* 249 Wis. at 159–60, 23 N.W.2d at 601–02.

We note further that had Alberti completed his plans for expansion a few months earlier, he would have been obliged to include a description of 143 West Main on his application for a 1981–82 license, and the Council would have had discretion to act on Alberti's request for an expansion of his licensed premises under its unquestioned authority to renew licenses annually. Under sec. 176.05 (1) and (5), Stats., the Council has the same discretion to consider requests for renewal that it has to consider original applications. *State ex rel. Ruffalo v. Common Council of The City of Kenosha,* 38 Wis. 2d 518, 524, 157 N.W.2d 568, 571 (1968). In addition, the parties do not dispute that were this court to uphold the trial court's writ, thereby doubling Alberti's licensed premises for the remainder of the 1981–82 license year, the Council's renewal authority would empower it to refuse a license for 143 West Main as of July 1, 1982.[1]

Alberti admits the Council's discretion to grant and renew liquor licenses and to control the transfer of a license from one business location to another. He contends, however, that within a given license year, a tavern operator may unilaterally expand the size of his licensed premises, so long as he expands onto premises that can be made to connect directly with the premises on which he was granted permission to sell liquor at the start of

---

[1] Although nothing in the record indicates that the issue before us has become moot, we recognize, given the passage of time, that it may have. Even if it has become moot as to Alberti and Whitewater, this court will decide the question because it is a matter of public interest that is likely to arise again and should be resolved to avoid further uncertainty. *See Fine v. Elections Board,* 95 Wis. 2d 162, 166, 289 N.W.2d 823, 825 (1980).

the license year. Alberti argues that sec. 176.14, Stats., excepts such an expansion from the scope of the Council's discretion. We disagree with Alberti's and the trial court's conclusion that sec. 176.14 creates such an exception.

Section 176.14, Stats., is titled "Application for license; subsequent changes." It provides that "[w]henever anything occurs to change any fact set out in *the application* of any licensee such licensee shall file with the issuing authority a notice in writing of such change within 10 days after the occurrence thereof." (Emphasis added.)

In construing a statute, the primary source is the language of the statute itself. *County of Milwaukee v. Proegler*, 95 Wis. 2d 614, 625, 291 N.W.2d 608, 613 (Ct. App. 1980). In determining the meaning of any single phrase or word in a statute, it is necessary to examine it in the light of the entire statute. *Id.*

Chapters 66, 176 and 139, Stats., comprise the legislature's overall plan for the regulation of traffic in beer and liquor. An explicit definition of a word in any one of the chapters has a strong bearing on the meaning of the defined word in the other two chapters. In ch. 66, "application" is defined as "a formal written *request . . . for the issuance of a license,* supported by a *verified statement of facts"* and filed with the clerk of the city in which the applicant resides. (Emphasis added.) Sec. 66.054(1)(h), Stats. A "license" is an "authorization . . . issued by the city council . . . relating to the sale [of] . . . fermented malt beverages." Sec. 66.054(1)(g), Stats. A Class B retail license authorizes its holder "to sell . . . intoxicating beverages to be consumed by the glass *only on the premises so licensed . . . ."* (Emphasis added.) Sec. 176.05(2)(a), Stats. "Licensed premises" are *"premises described in licenses* issued by cities . . . ."* (Emphasis added.) Sec. 139.01(3), Stats.

In deciding that the plain language of sec. 176.14, Stats., empowers a liquor licensee to make a unilateral change in the size of his licensed premises, the trial court failed to distinguish between an application for a license and the license itself. Section 176.14 requires a licensee to inform the license issuing authority whenever any of the facts that supported his request for a license have changed. A licensee's duty to keep the issuing authority up to date on the status of the sworn facts that accompanied his application is not, as the trial court assumed, necessarily equivalent with a power in the licensee to change the substance of the license that was granted to him on the basis of his original application.

Standing alone, sec. 176.14, Stats., is a puzzle because under most circumstances, a license application has served its purpose once it has been used as a basis for determining whether the license it requests should be granted. The language of the section does not reveal the legislature's purpose in requiring a licensee to update a document that would seem to have no further function. The section is ambiguous because reasonably well-informed people might construe it differently. *Kollasch v. Adamany*, 104 Wis. 2d 552, 561, 313 N.W.2d 47, 51–52 (1981). The court may, therefore, look to the legislative intent as evidenced by the context in which the statute appears. *Landvatter v. Globe Security Insurance Co.*, 100 Wis. 2d 21, 25, 300 N.W.2d 875, 877–78 (Ct. App. 1980).

This court concludes that in the context of the legislature's overall plan for the regulation of traffic in liquor and beer, sec. 176.14, Stats., was created to facilitate monitoring of ongoing liquor sales by the government and the public. Liquor license applications contain all of the facts relevant to a licensee's fitness to operate a liquor establishment, and the applications remain open to public scrutiny during the entire year for which a license has been granted. Certain changes in the verified facts that supported the original grant of a license may

prompt either the Department of Revenue or a member of the public to initiate proceedings for revocation of the license.

A liquor license application requires the name of the individual seeking to be licensed and the specific premises on which he requests authorization to sell intoxicants. In addition, the application requests facts that will enable an issuing authority to determine whether an applicant satisfies the statutory requirements for age, duration of residency, business status, ownership of other Wisconsin liquor licenses, indebtedness to liquor wholesalers and law-abiding conduct. *See* sec. 176.05 (5), Stats.

The audience for liquor license applications includes the public and the Department of Revenue as well as the issuing authority. All applications must be filed in advance of the date when licensing decisions are to be made, and legal notice must be given to inform the public of the applications on file by publishing in a local newspaper each applicant's name and address, the kind of license he requests and the location of the premises to be licensed. Sec. 176.09 (1), Stats. Whenever an issuing authority decides to grant a license, the actual license cannot be issued to the successful applicant until the city clerk sends a copy of his application to the Department of Revenue. Sec. 176.05 (8a), Stats.

At any time during the license year, a municipal resident or the Department of Revenue can initiate proceedings to revoke a liquor license if the licensee violates any provision of ch. 176. Secs. 176.11 and 176.121, Stats. Section 176.14, Stats., puts the burden on the licensee to be forthcoming with information that may have a bearing on his continuing fitness to hold a license.

In the context of ch. 176, it is reasonable to construe sec. 176.14, Stats., as a provision that requires a licensee to update his application during the license year for the purpose of facilitating scrutiny of his ongoing operation. Such a construction is consistent with the state's espe-

cially broad power to regulate the liquor traffic industry. *Moedern v. McGinnis*, 70 Wis. 2d 1056, 1071, 236 N.W.2d 240, 247 (1975).

By contrast, a construction of sec. 176.14, Stats., that would confer unilateral power on a licensee to alter the limited authority granted to him by his license is unreasonable. It is inconsistent with a license-issuing authority's power to control the granting, transfer and renewal of liquor licenses. Further, it is contrary to the general principle that the state has broad power to regulate the liquor industry.

This court will always reject an unreasonable construction of a statute where a reasonable construction is possible. *Wisconsin's Environmental Decade, Inc. v. Public Service Commission*, 84 Wis. 2d 504, 529, 267 N.W.2d 609, 623 (1978). Having arrived at a reasonable construction of sec. 176.14, Stats., we reject the trial court's conclusion that sec. 176.14 is dispositive of the issue before us.

We conclude that the expansion of the premises on which a licensee is legally entitled to sell liquor is analogous to the entire relocation of his licensed premises. The chief difference between a licensee who proposes to expand his premises and one who proposes to relocate is that the one who opts for expansion wants to have his original licensed premises and new premises as well.

To alter the express terms on which a beer and liquor license was granted, the licensee must return to the issuing authority for its approval. In the instant case, the Council was entitled to consider the effect that an expansion of the Woodshed premises would have on the quality of the neighborhood where it was located, and it was within the Council's discretion to deny Alberti's expansion request.

*By the Court.*—Judgment and order reversed.