**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 9, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP641**

STATE OF WISCONSIN

Cir. Ct. No. **2023CV65**

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN EX REL. CONCH CO. INC.,

PETITIONER-APPELLANT,

V.

VILLAGE OF EGG HARBOR AND VILLAGE OF EGG HARBOR BOARD OF TRUSTEES,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Door County: DAVID L. WEBER, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 HRUZ, J. Conch Co. Inc. appeals an order affirming the Village of Egg Harbor Board of Trustees' decision denying Conch's application for a transfer of its liquor licenses. Conch argues that the Board did not have discretion to deny the transfer and was instead required to grant the transfer pursuant to WIS. STAT.

§ 125.04(12)(a) (2023-24).[1]  Conch also argues that if the Board did have discretion to deny the transfer, the Board's decision was arbitrary, unreasonable, and based on insufficient evidence.

¶2      We conclude that the Board had the discretion to approve or deny Conch's application for the transfer of its liquor licenses pursuant to WIS. STAT. § 125.04(12)(a).  When read in context, and pursuant to our holding in *Alberti v. City of Whitewater*, 109 Wis. 2d 592, 327 N.W.2d 150 (Ct. App. 1982), the statutory language in § 125.04(12)(a) gives the "issuing authority" discretion to approve or deny a liquor license transfer.  Because the Board had that authority, we address Conch's alternative argument, and we conclude that the Board's discretionary decision denying the transfer was reasonable and supported by substantial evidence.  Accordingly, we affirm.

## BACKGROUND

¶3      Conch holds a Class B liquor license and a Class B beer license (the "liquor licenses") for Shipwrecked Brew Pub, a restaurant and brew pub that Conch operates, which is located at 7791 State Highway 42 in the Village of Egg Harbor.[2]  The restaurant sits on a corner where State Highway 42 intersects with County Highway G.  In 2022, Shipwrecked's property owner combined the property at 7791 State Highway 42 with an adjacent property located at 7783 State Highway 42 (the "expansion property").  Shipwrecked's property owner then

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] Conch does not own the property on which Shipwrecked is located, but it currently rents the land from the property owner.

2

sought and received a conditional use permit from the Village to expand Shipwrecked's use to the expansion property.

¶4 After receiving the conditional use permit, Conch sought to transfer its liquor licenses so that they would also apply to the expansion property. Conch did so by applying to the Board to amend the premises description on Conch's existing licenses. The Board considered the transfer application at its October 2022 board meeting, and it requested a drawing of the proposed expansion area before making a decision. Conch provided a map and an updated premises description amendment to the Board.

¶5 The Board then considered the transfer application at its November 2022 meeting. At the meeting, Shipwrecked's representative stated that there had been a large demand for outdoor seating since the COVID-19 pandemic, that the expansion property would have a fenced-in yard, and that Shipwrecked had been in business for more than 23 years. The representative also stated that Shipwrecked was a restaurant, not a tavern, and that it was not open late; that Shipwrecked had never had liquor license problems; and that it did not have unruly customers. Meanwhile, Shipwrecked's attorney stated that the expansion was 5,000 square feet and 80 seats, that every person "would have an 8-foot square for themselves," and that it was an expansion of the existing restaurant for use during warmer seasons.

¶6 The Board asked where the fence's gates would be located, and Shipwrecked's representative responded that the main gate would be on State Highway 42 with another gate by the restaurant's front door near the intersection. The Board then noted the following concerns: that the "whole area could be filled up with people"; that there had been no response to the health, safety and welfare

issues raised in previous Village plan commission minutes; that Shipwrecked was close to residential areas and State Highway G; that the corner on which Shipwrecked was located was "a bad corner" and "[h]aving two areas of people walking in and out is going to cause congestion right next to the highway"; and that there could be "people drinking and going right into the state highway." (Formatting altered.) For these reasons, the Board denied the transfer application.

¶7     Conch filed a certiorari action in the circuit court, seeking reversal of the Board's decision. Prior to the Board filing the record, both parties moved for judgment on the pleadings. In an oral ruling, the court partially granted judgment on the pleadings to the Board, concluding that the Board had the discretionary authority to approve or deny the transfer of Conch's liquor licenses. The court further concluded that it needed the certiorari record to conduct its full certiorari review of the Board's decision, and it ordered a return of the record. The court also denied Conch's competing motion for judgment on the pleadings.

¶8     Following the record return, Conch moved to supplement the record with two decisions from a separate circuit court case between the Village plan commission and Shipwrecked's property owner regarding Shipwrecked's conditional use permit,[3] Shipwrecked's expansion plans, aerial photographs of Shipwrecked and another restaurant, and the Village's zoning map. The Board also moved to supplement the record with a complaint and a decision from a federal court case involving Shipwrecked's property owner, Conch, the Board, and

---

[3] The Honorable D. Todd Ehlers presided over the case regarding Shipwrecked's conditional use permit.

the Village plan commission. The circuit court granted both motions in an oral ruling.

¶9 The circuit court ultimately affirmed the Board's decision, concluding that the Board acted within its jurisdiction; that it acted according to law; that its decision was not arbitrary, oppressive or unreasonable; and that, despite its scant reasoning, the Board made a reasonable determination based on the evidence. The court also denied Conch's motion for reconsideration. Conch now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

¶10 On appeal from a circuit court's decision in a certiorari action, we review the municipal body's decision—here, the Board's decision—and not that of the circuit court. *See Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. Our review affords the Board's decision a presumption of correctness and validity, and it is limited to: (1) whether the Board kept within its jurisdiction; (2) whether the Board acted according to law; (3) whether the Board's action was "arbitrary, oppressive or unreasonable and represented its will and not its judgment"; and (4) "whether the evidence was such that [the Board] might reasonably make the order or determination in question." *See Nowell v. City of Wausau*, 2013 WI 88, ¶¶24, 48, 351 Wis. 2d 1, 838 N.W.2d 852 (citation omitted).

¶11 Here, Conch argues that the Board did not act according to law because the statute addressing liquor license transfers—Wis. Stat. § 125.04(12)(a)—does not give the Board the discretionary authority to deny the transfer. Alternatively, if the Board had the authority to deny the transfer, Conch

5

contends that the Board's decision was not supported by substantial evidence and that its decision was arbitrary, capricious and unreasonable.

## I. The Board's Authority

¶12    Conch first argues that the Board did not have the discretionary authority to deny Conch's transfer application because WIS. STAT. § 125.04(12)(a) gives Conch the right to transfer its license upon fulfilling the statutory requirements.    Addressing Conch's argument requires us to interpret § 125.04(12)(a), which states:

> Every alcohol beverage license or permit may be transferred to another place or premises within the same municipality…. Transfers shall be made by the issuing authority upon payment of a fee of $10 to the issuing authority.  No retail licensee … is entitled to more than one transfer during the license or permit year.

¶13    The purpose of statutory interpretation is to give a statute its "full, proper, and intended effect."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  When interpreting a statute, our review begins with the statutory language, which is given "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*, ¶45.  We also interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46.  If this process results in "a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted).  If a statute is ambiguous, meaning that "it reasonably gives rise to more than one meaning," we look to extrinsic sources of legislative intent, such as

legislative history. ***Heritage Farms, Inc. v. Markel Ins.***, 2012 WI 26, ¶28, 339 Wis. 2d 125, 810 N.W.2d 465.

¶14 Further, when interpreting statutes, "we generally construe the word 'may' as permissive" and the word "shall" as mandatory. ***Id.***, ¶32. When "may" and "shall" appear in the same statutory section, "we 'can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings.'" ***Id.*** (citation omitted).

¶15 Conch argues that the use of the word "shall" in the third sentence of WIS. STAT. § 125.04(12)(a) means a transfer is mandatory upon a license holder paying a $10 fee and that the payment "is the only condition-precedent to enact a transfer." (Formatting altered.) Conch further contends that ***Alberti***, a case in which we held that the license-issuing authority has discretion to determine whether to approve or deny a proposed transfer, *see Alberti*, 109 Wis. 2d at 595, no longer controls because the legislature changed the statutory language interpreted in that case.

¶16 In contrast, the Board argues that a transfer is permissive, given the use of the word "may" in the first sentence of WIS. STAT. § 125.04(12)(a), and that, if permitted by the issuing authority, only then must the transfer be executed upon payment of the $10 fee to the issuing authority. The Board further contends that ***Alberti*** remains good law because the statutory language that we interpreted in ***Alberti*** did not substantively change when the legislature amended the statutes addressing liquor licensing. In reply, Conch argues that the verb "may" does not apply to the Board but rather applies to the license holder, and the use of that word means that the license holder "has the ability to transfer its license provided it meets the requirements but is not required to transfer said license."

¶17     Although WIS. STAT. § 125.04(12)(a) may be ambiguous when read in isolation, we conclude that, when read in context, a liquor license transfer is permissive only, and the Board had the discretionary authority to approve or deny Conch's application for a transfer of its liquor licenses. Our interpretation is further supported by our holding in *Alberti*, which remains controlling.

¶18     WISCONSIN STAT. ch. 125 governs the regulation of alcohol beverages, which include "fermented malt beverages and intoxicating liquor." WIS. STAT. §§ 125.01, 125.02(1). In 1981, the legislature created ch. 125 by combining the statutes governing fermented malt beverages (WIS. STAT. §§ 66.054-66.057 (1979-80)) and intoxicating liquors (WIS. STAT. ch. 176 (1979-80)). *See* 1981 Wis. Laws, ch. 79, §§ 4-4m, 11; *Nowell*, 351 Wis. 2d 1, ¶39. Various sections in ch. 125 give municipalities the authority to issue, renew, suspend or revoke liquor licenses, including the Class B licenses at issue here. *See* WIS. STAT. §§ 125.10, 125.12(1)(a), 125.26(1), 125.51(1).

¶19     WISCONSIN STAT. § 125.04 outlines the requirements for liquor license applications, renewals and transfers. Among other things, applications require information regarding "[t]he premises where alcohol beverages will be sold or stored or both." Sec. 125.04(3)(a)3. Class B licenses must "particularly describe the premises for which issued and are not transferable, except as provided in [§] 125.04(12)." WIS. STAT. §§ 125.26(3), 125.51(3)(d). Section 125.04(12), in turn, provides for the transfer of licenses from one premises to another or from person to person. *See* § 125.04(12)(a)-(b).

¶20     Here, Conch's request to amend the premises description in its already-issued liquor licenses "is analogous to a request for a transfer from one premises to another." *See **Wisconsin Dolls, LLC v. Town of Dell Prairie***, 2012

WI 76, ¶51, 342 Wis. 2d 350, 815 N.W.2d 690 (quoting *Alberti*, 109 Wis. 2d at 595). Conch does not dispute that it was required to inform the Board of the changes to the premises description in its liquor licenses pursuant to WIS. STAT. § 125.04(3)(h), which requires a license holder to "file with the issuing authority a written description" of "any change in any fact set out in an application for a license" within 30 days of that change. Rather, Conch contends that this requirement to notify the Board of any changes does not mean the Board has the discretionary authority to deny a transfer. We disagree.

¶21 The requirement in WIS. STAT. § 125.04(3)(h) that a license holder must notify the issuing authority of any change—such as a change in the premises description of an already-issued license—can only be for the purpose of the issuing authority reviewing that change and determining whether to approve or deny the change. The issuing authority's ability to review such changes is consistent with the authority to review liquor licenses granted to it throughout the various sections in WIS. STAT. ch. 125. Because changes are subject to review by the issuing authority, and transfers are analogous to (and in this case involve) changes in the premises description, transfers must also be subject to review by the issuing authority. This interpretation is clear from the statutory language in § 125.04(12)(a) stating that "[e]very alcohol beverage license … *may* be transferred to another place or premises within the same municipality." (Emphasis added.) The "may" means that the issuing authority determines whether to approve a transfer to another premises. Upon its approval, the issuing authority must transfer the license when the license holder pays the $10 fee.

¶22 The permissive language in WIS. STAT. § 125.04(12)(a), governing transfers "[f]rom place to place," is consistent with the language in § 125.04(12)(b), which governs transfers "[f]rom person to person" upon a license

holder dying, becoming bankrupt, making an assignment, or becoming disabled. Sec. 125.04(12)(b)1. Pursuant to that paragraph:

> Licenses to sell alcohol beverages may be transferred to persons other than the licensee if the licensee, or an applicant for a subsequently granted license, dies, becomes bankrupt or makes an assignment for the benefit of creditors during the license year or after filing the application. If a retail licensee becomes disabled, the municipality may, upon application, transfer the license to the licensee's spouse if that spouse may hold a license under [§ 125.04(5)] and complies with all of the requirements under this chapter applicable to original applicants, except that the spouse is exempt from payment of the license fee for the year in which the transfer takes place.

Sec. 125.04(12)(b)1. Both § 125.04(12)(a) and (b) recognize the issuing authority's discretion to approve or deny a transfer, given that both begin with the language that a license "may be transferred." *See* § 125.04(12)(a), (b)1. Conch is correct that § 125.04(12)(b)1. does not include the word "shall," but, contrary to Conch's contention, the absence of the term in that paragraph does not mean the legislature intended to remove the issuing authority's discretion to approve or deny transfers governed by § 125.04(12)(a).

¶23 Rather, the lack of the word "shall" supports our interpretation that the issuing authority retains discretion to determine whether to approve transfers from one premises to another under WIS. STAT. § 125.04(12)(a). Both § 125.04(12)(a) and (b) involve changes to facts in an application previously submitted to the issuing authority, which must be notified of such changes pursuant to § 125.04(3)(h). Section 125.04(12)(a) involves a change in the description of the premises provided in the original application and which must be particularly described for a Class B license. *See* WIS. STAT. §§ 125.04(3)(a)3., 125.26(3), 125.51(3)(d). Similarly, § 125.04(12)(b)1. involves a change in the

license holder, i.e., the applicant, which must be provided in the original application. *See* § 125.04(3)(a)1., 4.-5. Given the plain statutory authority granted to issuing authorities to review these changes, there would be no reason for the issuing authority to have discretion to approve a transfer from person to person but not to approve a transfer from one premises to another.

¶24 If the legislature had intended to grant a license holder an unqualified right to a transfer without any approval from the issuing authority, as Conch contends, it would not have included the first sentence of WIS. STAT. § 125.04(12)(a). Or, it could have simply replaced the word "may" in the first sentence with "shall." Indeed, Conch's interpretation would render the first sentence of § 125.04(12)(a) meaningless. Therefore, the use of "may" in § 125.04(12)(a) denotes the issuing authority's discretion to determine whether to approve a transfer.

¶25 Our conclusion that WIS. STAT. § 125.04(12)(a) gives the issuing authority discretion to approve or deny a transfer is supported by *Alberti*, where we interpreted WIS. STAT. § 176.14 (1979-80), the prior version of § 125.04(3)(h). Similar to § 125.04(3)(h), § 176.14 (1979-80) stated: "Whenever anything occurs to change any fact set out in the application of any licensee such licensee shall file with the issuing authority a notice in writing of such change within 10 days after the occurrence thereof."

¶26 In *Alberti*, a license holder sought to amend the premises description of his licensed tavern by adding the description of the building he had purchased next door to his existing tavern. *Alberti*, 109 Wis. 2d at 594-95. The license holder acknowledged that the municipality had the authority "to control the transfer of a license from one business location to another" pursuant to WIS. STAT.

11

§ 176.05(14) (1979-80),[4] the prior version of WIS. STAT. § 125.04(12)(a), but he contended that WIS. STAT. § 176.14 (1979-80) allowed him to unilaterally expand the size of his licensed tavern within a given license year without municipality approval as long as he expanded onto premises "that can be made to connect directly with the premises on which he was granted permission to sell liquor at the start of the license year." *Alberti*, 109 Wis. 2d 596-98.

¶27     We disagreed and concluded that, when read in context, WIS. STAT. § 176.14 (1979-80) required a license holder to update his or her original application with the municipality "during the license year for the purpose of facilitating scrutiny of his [or her] ongoing operation." *Alberti*, 109 Wis. 2d at 600. If a license holder had unilateral power to alter the limited authority granted to him or her by a license, we reasoned, it was inconsistent with the issuing authority's "power to control the granting, transfer and renewal of liquor licenses" and with the state's broad power to regulate the liquor industry. *Id.* at 601. Therefore, we held that when a license holder seeks to expand the size of the premises described in the license, "the proposed change is analogous to a request for a transfer from one premises to another, and the license issuing authority has discretion to approve or disapprove of the proposed expansion." *Id.* at 595.

¶28     Conch argues that our holding in *Alberti* no longer controls because we interpreted WIS. STAT. § 176.05(14) (1979-80), which did not include the word

---

[4] WISCONSIN STAT. § 176.05(14) (1979-80) stated:

> Every license … issued pursuant to this chapter or [WIS. STAT. § 66.054 (1979-80)] may for a fee of $10 be transferred by the proper issuing authority from one premises to another within the same city, town or village, but no licensee shall be entitled to more than one transfer in any one license year.

"shall" that is now in WIS. STAT. § 125.04(12)(a). Because the legislature changed the language from "may" to "shall," Conch contends that the rewording indicates an intent "to make clear that in the event of a transfer from place to place, the issuing authority does not have discretion to deny the transfer." Conch supports its arguments by pointing to the language in the prefatory note to 1981 Wis. Laws, ch. 79 and asserting that the prefatory note shows a legislative intent to make substantive changes to the law governing the regulation of alcohol beverages.

¶29 The stated intent for creating WIS. STAT. ch. 125 in the prefatory note, however, was to recodify "the laws governing the sale and taxation of alcohol beverages, but *to refrain from making substantive revisions of those laws*." 1981 Wis. Laws, ch. 79 (emphasis added). Further, as both parties note, the legislature also intended to "modernize outdated language, remove obsolete provisions, interpret and clarify the law, incorporate provisions of general law, reflect current interpretations and practices, remove conflicts and provide for consistency in the law. In order to achieve these goals, *limited* substantive changes have been made." *Id.* (emphasis added). Thus, the legislature sought to limit substantive changes to the law governing the regulation of alcohol beverages, and the continued use of the word "may" in WIS. STAT. § 125.04(12)(a) indicates the legislature did not intend to remove an issuing authority's discretion to approve or deny a transfer. Therefore, the recodification did not substantively change the transfer statute, and *Alberti*'s interpretation of the previous version remains controlling.

¶30 In all, pursuant to WIS. STAT. § 125.04(12)(a)'s statutory context and *Alberti*, the Board had the discretion to determine whether to approve or deny Conch's transfer application.

## II.  The Board's Decision

¶31    Conch next argues that the Board's decision denying the transfer of its liquor licenses was not supported by substantial evidence and that the Board's reasons for denying the transfer were "scant, inaccurate, and highly skeptical." Conch also argues that the Board's decision was arbitrary and capricious because it "did not consider reasonable evidence nor base[] [its] denial on valid logic" and because it relied on biased discussions from the Village plan commission's consideration and denial of Shipwrecked's conditional use permit application, which the circuit court in the conditional use permit case subsequently reversed.

¶32    Substantial evidence means "evidence of such convincing power that reasonable persons could reach the same decision as the board." *Oneida Seven Generations Corp.*, 362 Wis. 2d 290, ¶43 (citation omitted). "[T]he substantial evidence test is not a high bar." *State ex rel. Nudo Holdings, LLC v. Board of Rev. for City of Kenosha*, 2022 WI 17, ¶27, 401 Wis. 2d 27, 972 N.W.2d 544. Although less than a preponderance of the evidence, substantial evidence must be "more than 'a mere scintilla' of evidence and more than 'conjecture and speculation.'" *Oneida Seven Generations Corp.*, 362 Wis. 2d 290, ¶44 (citation omitted). Because the substantial evidence test "is highly deferential to the board's findings, we may not substitute our view of the evidence for that of the board." *Clark v. Waupaca Cnty. Bd. of Adjustment*, 186 Wis. 2d 300, 304, 519 N.W.2d 782 (Ct. App. 1994).

¶33    The evidence the Board considered in its decision included a map of Shipwrecked's proposed expansion; statements from Shipwrecked's representative that the area would be fenced and explaining the locations of the fence's two gates, that Shipwrecked was not open late, that it did not have unruly customers,

and that it had been in business for 23 years; and statements from Shipwrecked's attorney that the restaurant would expand by 5,000 square feet and add 80 additional seats. The Board also considered the congestion in the surrounding area resulting from the additional seating and the restaurant's location at the intersection of two busy highways.

¶34 Conch contends that the Board's congestion concern is unmerited and without basis because Shipwrecked is located in an area with at least five other establishments that serve alcoholic beverages, Shipwrecked has served patrons on its existing patio adjacent to State Highway 42 for more than 23 years without incident, and other area establishments that serve alcohol have been allowed to expand without concern for congestion. Conch, however, did not present any evidence that its expansion would not cause congestion issues such that the Board would be unable to base its denial on that concern.

¶35 The Board's congestion concern was a reasonable one based on the evidence presented and the board members' knowledge from living in the area. The fact that the expansion would add 80 seats to a restaurant in an area where congestion is already an issue supports the Board's decision. Conch did not present evidence of other establishments' expansions such that the Board, or this court, could compare those circumstances with Shipwrecked's expansion. Nor did Conch present evidence to refute or alleviate the Board's congestion concern. Thus, Conch has not overcome the presumption of correctness afforded to the Board's decision. Again, the substantial evidence test is not a high bar, and the Board's concern and its knowledge of the area are sufficient to meet that test and support the Board's decision denying the transfer of Conch's liquor licenses.

¶36 For the same reasons, the Board's decision was not arbitrary and capricious because the congestion concern provided a rational basis for denying the transfer. *See id.* at 306 (stating that a board's decision is "arbitrary or capricious if it is unreasonable or without a rational basis"). Here, again, the Board's concern was a reasonable one given the number of additional seats in the proposed expansion and the board members' experience living in the area where Shipwrecked is located.

¶37 Furthermore, the fact that one board member pointed to the Village plan commission's decision to deny Shipwrecked's conditional use permit application does not render the Board's decision arbitrary and capricious. When Shipwrecked's property owner applied for a conditional use permit, the plan commission denied it based, in part, on congestion issues.[5] Following the denial of the conditional use permit, Shipwrecked's property owner filed a certiorari action in the circuit court against the Village and the plan commission. The court reversed the plan commission's decision and granted the permit, concluding that the plan commission did not act according to law because the actions of two of its members were impermissibly biased and violated Shipwrecked's property owner's right to an impartial commission.[6]

---

[5] Specifically, the Village plan commission found that Shipwrecked's location at the intersection of State Highway 42 and County Highway G—both of which are major contributors to vehicular traffic—was a recognized site of traffic congestion problems and high levels of pedestrian traffic. The decision further found that allowing the expanded use would contribute to and exacerbate the vehicular and pedestrian congestion in an area where those issues are already a significant problem.

[6] We affirmed the circuit court on different grounds in *Sojenhomer LLC v. Village of Egg Harbor*, No. 2022AP1991, unpublished slip op., ¶¶1-3 (WI App Dec. 12, 2023).

¶38    At the November 2022 meeting regarding the licenses' transfer, one of the Board members referred to the Village plan commission's consideration of the conditional use permit application, stating that "the health, safety, and welfare were all address[ed] when the [conditional use permit] was denied. We have not had a response to those issues." (Formatting altered.) The Board member further stated that the circuit court issued its "decision based on procedure" and not "based on facts from the [p]lan commission." (Formatting altered.)

¶39    Conch asserts that the Board relied on and referred to the "the poisoned reasoning behind the [Village] [p]lan [c]ommission's conditional use permit denial" and "direct[ly] insert[ed]" those discussions into its decision denying the transfer. Conch further asserts that the Board member did not expand on the health, safety and welfare issues that he mentioned, and he failed "to give any context to his reasoning." Therefore, Conch argues, the Board's reliance on the plan commission's reasoning makes the Board's decision arbitrary and capricious.

¶40    But the Board did not base its decision solely—or even primarily—on the Village plan commission's decision when denying the licenses' transfer in this case. And the fact that two members of the plan commission were biased does not render the Board's concern regarding congestion an irrational one. The Board raised its own congestion concern at the November 2022 meeting, and the one member who referenced the plan commission's decision appeared to be referencing only the congestion concern raised in that decision. Again, the Board's congestion concern was a reasonable one based on the evidence presented to the Board, which supported its decision denying the transfer.

    *By the Court.*—Order affirmed.

17

Not recommended for publication in the official reports.