David C. WILLIAMS, Plaintiff-Appellant,

v.

CITY OF LAKE GENEVA, a Municipal corporation,
Defendant-Respondent,

Spyro CONDOS and Patricia Condos, Intervening
Defendants-Respondents.

Court of Appeals

*No. 01–1733. Submitted on briefs January 25, 2002.—Decided
March 13, 2002.*

2002 WI App 95

(Also reported in 643 N.W.2d 864.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *David C. Williams* of *Allen, Harrison, Williams, McDonell & Swatek*, Lake Geneva.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Tara M. Mathison* of *Davis & Kuelthau, S.C.*, and *Daniel J. Borowski* of *Davis & Kuelthau, S.C.*, Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1. ANDERSON, J. This is a liquor licensing issue. David C. Williams appeals from a trial court judgment dismissing his complaint in which he asked the court to review a decision of the City of Lake Geneva to dismiss his Verified Complaint claiming that Spyro Condos and Patricia Condos violated Wis.

STAT. § 125.66 (1999–2000)[1] by selling and possessing with intent to sell intoxicating liquor without holding an appropriate license or permit. For the reasons discussed below, we reverse and remand with directions.

¶ 2. The relevant facts are undisputed. On September 14, 1999, the City issued to the Condoses a Class B Combination Intoxicating Liquor and Fermented Malt Beverage License for the license period beginning July 1, 1999, and ending June 30, 2000, based on the Condoses' application for an Original Alcohol Beverage License. Neither the city clerk nor anyone else on behalf of the City published a Notice of Application as is required by WIS. STAT. § 125.04(3)(g).[2] The following

---

[1] WISCONSIN STAT. § 125.66(1) provides:

No person may sell, or possess with intent to sell, intoxicating liquor unless that person holds the appropriate license or permit. Whoever violates this subsection may be fined not more than $10,000 or imprisoned for not more than 9 months or both.

All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[2] WISCONSIN STAT. § 125.04(3)(g) provides:

*Publication of application for license.* The municipal clerk shall publish each application for a Class "A", Class "B", "Class A", "Class B" or "Class C" license, except licenses under ss. 125.26(6) and 125.51(10), prior to its issuance in a newspaper according to the following conditions:

1. The publication shall include the name and address of the applicant, the kind of license applied for and the location of the premises to be licensed.

2. The newspaper utilized for publication shall have been regularly published, on a daily or weekly basis for a period of not less than 2 years before the date of publication in the municipality in which is located the premises to be licensed.

3. If the municipality in which the premises is located has no newspaper, the newspaper utilized for publication shall be one having circulation in the municipality and designated by the

year, on June 15, 2000, the City issued the Condoses a liquor license for the license period beginning July 1, 2000, and ending June 30, 2001, based on the Condoses' application for a Renewal Alcohol Beverage License.

¶ 3. On or about June 26, 2000, Williams served his Verified Complaint upon the City claiming that the Condoses violated WIS. STAT. § 125.66 by selling and possessing with intent to sell intoxicating liquor without holding an appropriate license or permit. The Condoses' 1999–2000 liquor license was due to expire June 30, 2000. *See* WIS. STAT. § 125.26(1). On July 24, 2000, twenty-four days after the expiration of the 1999–2000 license, a hearing was held on Williams' Verified Complaint.

¶ 4. The City found that the Notice of Application for the 1999–2000 license was not published as required by WIS. STAT. ch. 125, and thus concluded that the 1999–2000 license was void under WIS. STAT. § 125.04(2), which provides that:

> No license or permit may be issued to any person except as provided in this chapter. Any license or permit issued in violation of this chapter is void.

---

governing body. If no designation is made, publication shall be in the newspaper having the largest circulation in the municipality.

4. The newspaper utilized for publication shall be one that is published on a daily basis, except that a weekly newspaper may be utilized if a daily newspaper is not published in the municipality.

5. The publication shall be printed in a daily newspaper on 3 successive occasions, or if a weekly newspaper is utilized, it shall be printed at least once.

6. At the time the application is filed, the applicant shall pay to the clerk the cost of publication as determined under s. 985.08.

The City found that the Condoses sold liquor under the void license in violation of Wis. Stat. § 125.66(1), which provides:

> No person may sell, or possess with intent to sell, intoxicating liquor unless that person holds the appropriate license or permit. Whoever violates this subsection may be fined not more than $10,000 or imprisoned for not more than 9 months or both.

The City further found that the void/unpublished license (i.e., the "old" 1999–2000 license) expired on June 30, 2000, and that a "new," properly issued license went into effect July 1, 2000. The City took no action against the "new" 2000–2001 license and dismissed Williams' Verified Complaint. Thereafter, Williams filed a complaint with the trial court pursuant to Wis. Stat. § 125.12(2)(d),[3] to review the City's decision.

¶ 5. At trial, Williams' position was that Wis. Stat. § 125.12(2)(b)2 required the City to suspend or revoke the "new"/current license upon its finding that the Condoses had sold liquor illegally under the "old"/expired license. Section 125.12(2)(b)2 provides in relevant part:

> If the licensee appears as required by the summons and denies the complaint, both the complainant and the licensee may produce witnesses, cross-examine witnesses and be represented by counsel. The licensee shall be provided a written transcript of the hearing at his or her expense. If the hearing is held before the municipal governing body and the complaint is found to be true, *the license* shall either be suspended for not less

---

[3] Wisconsin Stat. § 125.12(2)(d) authorizes judicial review of the action of any municipal governing body with regard to revocations, suspensions, and/or refusals to issue or renew liquor licenses for any person desiring review.

> than 10 days nor more than 90 days or revoked, except
> that, if a complaint under par. (ag)4. is found to be true
> with respect to a license issued under s. 125.51(4)(v),
> the license shall be revoked. (Emphasis added.)

The City took the position that the "new" license was a new creature and under § 125.12(2)(b)2 the City did not have the authority to suspend or revoke the "new" license for a violation pertaining to the "old" license. The City argued that the language of § 125.12(2)(b)2 indicates that its mandatory penalty can only be levied against "*the*" license under which a violation has occurred. And, since "*the*" license under which the violation occurred (i.e., the 1999–2000 license) had already expired, there was no authorized penalty that the City could impose against a "new" license under § 125.12(2)(b)2. The City also maintained that this interpretation does not leave the City powerless because under § 125.12(1)(a), it retains *discretionary* authority to revoke or suspend "*any*" license for a violation found under an "old" license. Section 125.12(1)(a) provides:

> Except as provided in this subsection, any municipality
> or the department *may* revoke, suspend or refuse to
> renew *any license* or permit under this chapter, as
> provided in this section. (Emphasis added.)

¶ 6. On March 9, 2001, the trial court found that the Condoses' 1999–2000 liquor license was void because notice of their 1999–2000 license application had not been published as required by WIS. STAT. § 125.04(3)(g), that therefore, as a matter of law, no liquor could be sold under the 1999–2000 license, and that the Condoses violated WIS. STAT. ch. 125 by selling alcohol after September 13, 1999. The trial court adopted the City's position and concluded that the

624

revocation or suspension covered under Wis. Stat. § 125.12(2)(b)2 only applies to the license under which a violation is found; specifically, the court held that the City did not have the authority under § 125.12(2)(b)2 to suspend or revoke the Condoses' "renewed" license. The court also concluded that the City did have discretionary authority to suspend or revoke the "renewed" license but only under § 125.12(1)(a). Finally, the court held that the City acted correctly and did not violate § 125.12(2)(b)2. On June 12, 2001, Williams' complaint was dismissed by the trial court. Williams appeals.

¶ 7. On appeal, Williams argues that the trial court's interpretation creates an unreasonable or absurd result, that its decision was based upon a mistaken view of the law and the nature of liquor licenses, and that it failed to construe Wis. Stat. § 125.12 as a whole to harmonize possible conflicting statutory provisions. This case involves the interpretation of Wis. Stat. ch. 125. The interpretation or application of a statute is a question of law which this court reviews de novo. *State v. Pablo R.*, 2000 WI App 242, ¶ 7, 239 Wis. 2d 479, 620 N.W.2d 423. When we interpret a statute, our goal is to ascertain and give effect to the intent of the legislature. *Id.* We first look to the language of the statute itself. *Id.* If the language of the statute is unambiguous in its meaning, we go no further. *Id.* A cardinal rule of statutory construction is that statutes must be construed to avoid an absurd or unreasonable result. *State v. Mendoza*, 96 Wis. 2d 106, 115, 291 N.W.2d 478 (1980). We will not find a statute ambiguous simply because the parties differ as to its meaning. *State ex rel. Girouard v. Circuit Court for Jackson County*, 155 Wis. 2d 148, 154–55, 454 N.W.2d 792 (1990). "The plain meaning of a

625

statute takes precedence over all extrinsic sources and rules of construction." *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 282 n.2, 548 N.W.2d 57 (1996).

¶ 8. First, we note that the trial court was correct in finding that the 1999–2000 license issued to the Condoses was void. The City never should have issued the license because a Notice of Application had not been published as required under WIS. STAT. § 125.04(3)(g) which makes it mandatory that a Notice of Application for a Class B liquor license be published in a newspaper. This nonpublication violation made the 1999–2000 license void under § 125.04(2), which provides that:

> No license or permit may be issued to any person except as provided in this chapter. Any license or permit issued in violation of this chapter is void.

Additionally, the trial court was correct in finding that the Condoses' selling of liquor under a void license constituted a violation of WIS. STAT. § 125.66(1), which provides:

> No person may sell, or possess with intent to sell, intoxicating liquor unless that person holds the appropriate license or permit. Whoever violates this subsection may be fined not more than $10,000 or imprisoned for not more than 9 months or both.

¶ 9. That established, we move forward in our analysis. First, it is necessary to define what is meant by "void." BLACK'S LAW DICTIONARY 1568 (7th ed. 1999) defines the meaning of "void" as:

> Of no legal effect; null . . . *void* can be properly applied only to those provisions that are of no effect whatsoever—those that are an absolute nullity.

Thus, a void license is an absolute nullity; it is of no legal effect. Our supreme court held that a liquor license found to be void is "null . . . and affords no protection to the [licensee] . . . . Consequently, [a void license is] no license . . . ." *State ex rel. Treat v. Hammel, Mayor*, 134 Wis. 61, 114 N.W. 97 (1907).

¶ 10. Our review of the trial record leads us to the conclusion that the trial court correctly found that the 1999–2000 license was void. We now take the next logical step and hold that a license based on *renewal* of an absolute nullity is itself an absolute nullity and "affords no protection to the [licensee]." *See id.* at 67.

¶ 11. On appeal, Williams correctly asserts that under WIS. STAT. § 125.12(3) renewal is guaranteed to a renewal applicant if proper application is made "unless the [renewal] applicant is found to have violated certain specified laws." Williams does not develop this insight; we do so now as it is the crux of our decision. Section 125.12(3) covers refusals by local authorities to "renew" licenses:

> A municipality issuing licenses under this chapter may refuse to renew a license *for the causes* provided in sub. (2)(ag). Prior to the time for the renewal of the license, the municipal governing body or a duly authorized committee of a city council shall notify the licensee in writing of the municipality's intention not to renew the license and provide the licensee with an opportunity for a hearing. The notice shall state the reasons for the intended action. The hearing shall be conducted as provided in sub. (2)(b) and judicial review shall be as provided in sub. (2)(d). If the hearing is held before a committee of a city council, the committee shall make a report and recommendation as provided under sub.

627

(2)(b)3. and the city council shall follow the procedure specified under that subdivision in making its determination. (Emphasis added.)

Thus, if a municipality (like the City) wishes to refuse *renewal* of a liquor license, it must show cause. Prior to the time for the renewal of the license, it must notify the licensee in writing of its intention not to renew the license and it must provide the licensee with an opportunity for a hearing. In short, renewal applicants have a due process right to an administrative hearing on cause if renewal is refused.

¶ 12. In contrast, there is no such due process right given to applicants filing for a *"new"/original* liquor license. Compare WIS. STAT. § 125.12(3m) which covers refusals by municipalities to issue "new" licenses:

> If a municipal governing body or duly authorized committee of a city council decides not to issue a new license under this chapter, it shall notify the applicant for the new license of the decision not to issue the license. The notice shall be in writing and state the reasons for the decision.

¶ 13. The language of the statute is unambiguous in its meaning. The renewal licensee, if refused, is guaranteed a right to be heard by the municipality, and the municipality must show cause for its refusal. The new licensee, if refused, has no such guarantee. The procedural mandate required for refusal of a renewal license application gives the renewal licensee an advantage over the new licensee. Because the Condoses' original license is void, it affords them no protection. *Treat*, 134 Wis. at 67. The Condoses are not entitled to the due process rights of renewal applicants. *See id.*

This is a reasonable legislative intent and we must give effect to the intent of the legislature. *Pablo R.*, 2000 WI App 242 at ¶ 7.

¶ 14. We hold that the trial court erred in finding that the 2000–2001 license was appropriate under WIS. STAT. ch. 125. Once the City found that the Condoses' 1999–2000 license was void, the Condoses could not apply for an appropriate liquor license via renewal of that void license. The only way for them to obtain an appropriate license was to file an application for an Original Alcohol Beverage License. In fact, the Condoses filed an application for a Renewal Alcohol Beverage License application and were granted a "renewed" license. The "renewed" license was as much of a legal nullity as the original voided 1999–2000 license because the City could not issue an appropriate license from a renewal application of a void license. In short, the 2000–2001 license, like the 1999–2000 license, was void by virtue of it being a "renewal" of a void license.

*By the Court.*—Judgment reversed and cause remanded.