WISCONSIN DOLLS, LLC,
Plaintiff-Appellant-Petitioner

v.

TOWN OF DELL PRAIRIE and
Town of Dell Prairie Town Board,
Defendants-Respondents

Supreme Court

*No. 2010AP2900. Oral argument March 7, 2012.
—Decided July 5, 2012.*

2012 WI 76

(Also reported in 815 N.W.2d 690.)

For the plaintiff-appellant-petitioner, there were briefs by *Matthew Fleming, Margery Tibbetts-Wakefield* and *Lawrence Bechler, Murphy Desmond, S.C.* Madison, and oral argument by *Lawrence Bechler.*

For the defendants-respondents, there was a brief filed by *Mark Hazelbaker* and *Michael R. O'Callaghan, Hazelbaker & Associates, S.C.,* Madison, and oral argument by *Mark Hazelbaker.*

An amicus curiae brief was filed by *Michael J. Lawton* and *Kenneth Axe, Boardman & Clark, LLP,* Madison, for the Tavern League of Wisconsin, Inc.

¶ 1. DAVID T. PROSSER, J.    This is a review of a published decision of the court of appeals affirming the circuit court's dismissal of Wisconsin Dolls, LLC's (Wisconsin Dolls) certiorari action.

¶ 2.    The Town of Dell Prairie (Town), in renewing the Class "B" and "Class B" alcohol beverages licenses[1] (hereinafter "license") of Wisconsin Dolls, reduced the described "premises" of the license from the entire eight

---

[1] The Class "B" license and "Class B" license were granted on a "combination form" "Class B license." We refer to this license in the singular throughout the opinion.

acres of Wisconsin Dolls' resort property to only the "Main Bar/Entertainment Building" of the resort. The Adams County Circuit Court, Charles A. Pollex, Judge, dismissed Wisconsin Dolls' certiorari action challenging the reduction. The court of appeals affirmed on different grounds, holding that the original license was void because it failed to particularly describe the premises to which it applied. *Wis. Dolls, LLC v. Town of Dell Prairie*, 2011 WI App 141, 337 Wis. 2d 431, 806 N.W.2d 449.

¶ 3.   We conclude the following. First, the original license granted to Wisconsin Dolls was not void due to an insufficient description of the premises. Wisconsin Dolls asked for a license that would cover the entire eight acres of the resort, and the original license explicitly covered the entire eight acres of the resort. Second, the Town of Dell Prairie exceeded its authority when it modified the description of the premises in renewing Wisconsin Dolls' alcohol beverages license. Towns may attach conditions to an alcohol beverages license, including limitations to the described premises, when the license is initially granted. If a town later wishes to modify the premises described in the license, especially if the modification disadvantages the licensee, it must pass a valid regulation or ordinance under Wis. Stat. § 125.10(1),[2] follow the procedures outlined in Wis. Stat. § 125.12, or negotiate the consent of the licensee. A town is not permitted to unilaterally reduce the description of the premises when it renews an alcohol beverages license. The Town here did not proceed on a correct theory of law, and thus its modification of the license cannot be sustained.

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

¶ 4. We reverse the decision of the court of appeals and remand the case to the circuit court to order the Town to restore the "all 8 acres of the resort" premises description to Wisconsin Dolls' former and current alcohol beverages licenses.

## I. FACTUAL BACKGROUND

¶ 5. Wisconsin Dolls is a resort that is licensed as an Adult-Oriented Establishment under Town of Dell Prairie Ordinance No. 4–2004. The resort is located in the Town of Dell Prairie at 4179 State Highway 13, outside of Wisconsin Dells.[3]

¶ 6. On December 31, 2004, Wisconsin Dolls filed its original application for an alcohol beverages license with the Town of Dell Prairie. It sought both a Class "B" fermented malt beverages license and a "Class B" intoxicating liquor license. On its application form, Wisconsin Dolls listed the premises description as "ALL 8 ACRES OF RESORT." The license was granted in January 2005.

¶ 7. On subsequent renewal applications, Wisconsin Dolls listed the following premises descriptions:

2005–06: Bar, cooler, Lg room in office all 8 acres of R[esort].

2006–07: Bar-cooler, Lg Room in office—all 8 acres of r[esort].

2007–08: BAR, COOLER, Lg ROOM IN OFFICE AND all 8 Acres of resort.

---

[3] The description of the premises in the Adult-Oriented Establishment license granted to Wisconsin Dolls by the Town has ranged from the address of 4179 State Road 13, Wisconsin Dells, WI 53965 to "all 8 acres of the resort" at that address to "all buildings on the entire 8 acres" at that address.

2008–09: All buildings and property comprising approximately 8 acres.

2009–10: All buildings & property comprising approx. 8 acres.

¶ 8. The Town granted a Class "B" Fermented Malt Beverages and "Class B" Intoxicating Liquors license for each year. The combined license included the following premises descriptions:

Jan. 24, 2005–June 30, 2005: Wisconsin Dolls Resort 4179 State Highway 13 All 8 acres of the resort.

2005–06[4]: Wisconsin Dolls Resort 4179 State Highway 13 Wisc. Dells, WI All 8 acres of the resort.

2006–07: Wisconsin Dolls Resort 4179 State Highway 13 Wisc. Dells WI All 8 acres of the resort

2007–08: [description unavailable].[5]

2008–09: Wisconsin Dolls, LLC 4179 State Rd 13 Wis Dells, WI 53965

2009–10: Wisconsin Dolls, LLC 4179 State Road 13, Wisconsin Dells, WI 53965 (Main Bar/Entertainment Building)

¶ 9. The previous owner of the property, James D. Canham, operated Arrowhead Resort/The Hill Bar & Grill. Canham had an alcohol license that described the premises as the "Bar and basement." He surrendered that license upon selling the property.

---

[4] The license is valid from July 1 of the initial year until June 30 of the following year. *See* Wis. Stat. § 125.04(11)(b)2.

[5] We do not find in the record a copy of the license from 2007–08. However, there is no dispute that a license was granted that year.

355

## II. PROCEDURAL HISTORY

¶ 10. On June 9 and June 13, 2009, the Town board held special meetings to discuss a number of subjects. One item addressed was "corrective liquor license applications." The Wisconsin Dolls alcohol license was not the only license discussed at the meetings but it was the first and it generated the most discussion. After the Town discussed the address listed on the alcohol license renewal application form and a question about alcohol wholesalers, the following exchange occurred:

> The Chairman: Okay. You read the article that Attorney Wood — and I also talked to the town's [sic] association and Attorney Carol, and there are — our situation in here was the — that all buildings and traffic comprising of the approximately 80 [sic] acres and what — she said that if you have all that property open, that any — anyone under 21 through there — you don't store. You don't serve alcohol on all eight acres and all of the units over there. If they need to store stuff in an additional building, that should be specified as part of the application; but otherwise, the bar building is the main building.

> Now, when the original liquor license was gotten by Halbach, who had that motel for years — and he's the one that sold it to the prior owners that — they had before this and he had the bar.

> He started out with a beer bar because he was serving meals and everything in the main part of the hotel complex. And so when Halbach got this and they put it into the Dolls, apparently they — they put all buildings in and all eight acres on the application. Well, the application was never shown to the board members, and there was never an approval to change it to all of this part. I was the one that started digging, and I want to see what these applications look like.

356

It's not that we weren't — we are not taking the license away from that portion of the — the building. It's — the fact is that all eight acres — it doesn't make sense. Okay.

Now, at the beginning of the year when they filed for the adult entertainment aspect, they asked to be allowed to have a juice bar there. Well, the purpose of a juice bar is to get the 18–year-olds to 21–year-olds to come in; but they can't drink alcohol. Now, if you have got a license running on the whole premises, there's (inaudible) that creates a — a legal problem.

Unidentified Male Speaker: (Inaudible) have the juice bar if they are going to serve alcohol on all eight acres. Anybody under 21 can't be there without a parent —

The Chairman: Right. If they —

Unidentified Male Speaker: — or on that property.

The Chairman: Right. So anyway, that is why — as far as the main building and — if they need storage in one of the other buildings of — I don't have a problem with that at all. We actually approved it subject to — but we are not — we are not approving that it covers the entire eight acres. So that is — that's where we sit on that issue. And we had the letter from — here we are really not taking away a license for his main business right there so—

And to be serving and storing and having the records in all of the buildings and on the eight acres is too big, . . .

¶ 11.   An unidentified speaker noted that the licenses had been granted in the past. A response suggested that previously the board did not closely review the applications. The chairman stated "there has not been many problems that I am aware of, of serving minors around the rest of the property over there." The

357

chairman also stated that only the main building ought to be licensed, because minors might visit the property, and possibly a storage building could be licensed: "that, I can agree with, but not the eight acres." The chairman further explained:

> [O]ur position as board members is for the health, the safety and welfare of the people in the township. Okay.
>
> When you have an open situation like this — that you are going to have people from 19 to 21 or even other kids could come on the property, that's not in their best — the best interest of these people — to be in an establishment such as that — in the liquor — and the liquor being available — to get served alcohol and that — now, that's my — my concern right there.

¶ 12. The minutes from the June 9, 2009, Town board meeting state, in pertinent part:

> Wisconsin Dolls, LLC: The address for Wisconsin Dolls, LLC on the application is different than the address listed on the Wisconsin Department of Financial Institutions website. This will need to be amended and also the description of the premises is very vague and needs to be more specific to meet the requirements of Chapter 125 in regards to covering 8 acres.

¶ 13. There is no transcript of the June 13 meeting in the record. The minutes of the June 13 meeting stated in pertinent part:

> Discussion occurred in regard to the premises description on the application from Wisconsin Dolls. . . . Chairman Schulz made a motion to issue the license to Wisconsin Dolls if the application is amended to restricting the premises to the main bar building and storage area . . . A roll call vote was made with all three board members voting yes.

358

¶ 14.  On February 16, 2010, Wisconsin Dolls filed a summons and complaint in Adams County Circuit Court seeking certiorari review of the Town's decision to modify and reduce the description of the premises in Wisconsin Dolls' alcohol beverages license when the license was renewed. The Town moved to dismiss the action.

¶ 15.  On October 19, 2010, the circuit court held a hearing on the motion. The court made the following findings:

> [The Town] lacked any evidence of any of the causes required for refusal to renew a license under sec. xxx125.12(3) [and] (2)(ag) of the statutes.
>
> . . . .
>
> [The Town] gave no prior written notice to the Plaintiff as to why the Board would take action to deny renewal of the license, and there was no opportunity for the Plaintiff to be heard, and no written explanation why the action was taken.
>
> . . . .
>
> [T]he action taken by the Town of Dell Prairie did not and does not constitute a refusal to renew the license of the Plaintiff. In issuing the licenses in question, the Board is directed under the provisions of sec. 125.26(3) and sec. 125.51(3)(d) of the statutes to particularly describe the premises for which it is issued. And the Court finds and concludes that that is what was done by the Town Board in this case.

¶ 16.  On November 2, 2010, the circuit court dismissed the certiorari proceeding with prejudice.

¶ 17.  The court of appeals affirmed in a published decision. *Wis. Dolls, LLC,* 337 Wis. 2d 431. The court of appeals framed the issue as "whether the issuance of a

license for 2008–2009 for all eight acres of Wisconsin Dolls' property violated any provisions in Wis. Stat. ch. 125." *Id.*, ¶ 11. The court of appeals focused on the statutory requirement that a license "particularly describe the premises." *Id.*, ¶¶ 15–20. The court of appeals determined that the license did not particularly describe the premises and was thus void. *Id.*, ¶¶ 25–27. The court of appeals withheld judgment on whether the license issued for 2009–2010 was valid, not having been applied for on the form for an original application. *Id.*, ¶ 28. The court of appeals concluded that procedural due process was not violated in this case because the original license was void. *Id.*, ¶¶ 29–31.

## III.  STANDARD OF REVIEW

■

¶ 18.   This case is here on certiorari review of a decision of the Town board of the Town of Dell Prairie, Adams County. On certiorari review, our "review is limited to: (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question." *Ottman v. Town of Primrose,* 2011 WI 18, ¶ 35, 332 Wis. 2d 3, 796 N.W.2d 411.

■

¶ 19.   To resolve this case, we focus on the second prong of certiorari review, namely, whether the municipality proceeded on a correct theory of law. This requires us to interpret Chapter 125 of the Wisconsin Statutes. Statutory interpretation presents a question

of law that we review de novo. *Zwiefelhofer v. Town of Cooks Valley,* 2012 WI 7, ¶ 20, 338 Wis. 2d 488, 809 N.W.2d 362.

## IV. DISCUSSION

¶ 20.  We address two issues. First, was the alcohol beverages license issued to Wisconsin Dolls void because it did not "particularly describe the premises" to which it applied? Second, did the Town have statutory authority to unilaterally reduce the premises description in the Wisconsin Dolls alcohol beverages license when it renewed the license?

¶ 21.  Since 1933, the regulation of "intoxicating liquors" has been reserved to the states. U.S. Const. Amend. XXI; *Eichenseer v. Madison-Dane Cnty. Tavern League,* 2008 WI 38, ¶ 31, 308 Wis. 2d 684, 748 N.W.2d 154.

¶ 22.  In Wisconsin, the legislature has regulated sale of "alcohol beverages" in Chapter 125 of the statutes. Wis. Stat. ch. 125. Wisconsin has enacted a comprehensive system of regulation covering "the 3–tier system for alcohol beverages production, distribution, and sale." Wis. Stat. § 125.01. The Wisconsin Department of Revenue has been given substantial rulemaking authority over alcohol beverages. Wis. Stat. §§ 125.02(5), 125.03. The state also has delegated authority to local municipalities to issue licenses for the sale of alcohol beverages and to regulate otherwise the sale of alcohol beverages. *E.g.,* Wis. Stat. §§ 125.10; 125.26; 125.51.

¶ 23.  Several provisions of Chapter 125 are relevant to this case. The legislature has posited that "[n]o person may sell, manufacture, rectify, brew or engage in any other activity for which this chapter provides a license, permit, or other type of authorization without

holding the appropriate license, permit or authorization issued under this chapter." Wis. Stat. § 125.04(1). The procedures for issuing licenses are outlined in Chapter 125. "No license or permit may be issued to any person except as provided in this chapter. Any license or permit issued in violation of this chapter is void." Wis. Stat. § 125.04(2).

¶ 24. This case involves a Class "B" fermented malt beverages license under Wis. Stat. § 125.26 and "Class B" intoxicating liquor license under Wis. Stat. § 125.51(3), combined. Wisconsin Stat. § 125.26(1) provides that "[e]very municipal governing body may issue Class 'B' licenses for the sale of fermented malt beverages from premises within the municipality." Wisconsin Stat. § 125.51(1)(a) provides that "[e]very municipal governing body may grant and issue 'Class A' and 'Class B' licenses for retail sales of intoxicating liquor."

¶ 25. The procedure to apply for an alcohol beverages license is spelled out in the statutes. The Department of Revenue is charged with preparing an application form for the licenses described in Chapter 125. Wis. Stat. § 125.04(3). The form for an original application for an alcohol beverages license is more extensive than the form for a renewal. Wis. Stat. § 125.04(3)(a)-(b). *See generally Williams v. City of Lake Geneva*, 2002 WI App 95, 253 Wis. 2d 618, 643 N.W.2d 864 (discussing the relationship between the process of granting a license and the process of renewing a license).

¶ 26. Applications for an alcohol beverages license are filed with the municipal clerk of the municipality "of the intended place of sale." Wis. Stat. § 125.04(3)(e).

¶ 27. Before a license is issued, the applicant must pay the license fee, Wis. Stat. § 125.04(8), set by the municipality (within certain statutory parameters), *e.g.,* Wis. Stat. §§ 125.26(4), 125.51(3)(e).

¶ 28.   Once a license has been granted, the license must be framed, Wis. Stat. § 125.04(10)(a), and "conspicuously displayed for public inspection at all times in the room or place where the activity subject to . . . licensure is carried on." Wis. Stat. § 125.04(10)(b).

### A.   Were Wisconsin Dolls' Alcohol Beverages Licenses from 2005–2009 Valid?

¶ 29.   The first issue is whether the annual licenses that the Town issued to Wisconsin Dolls for the years of 2005–2009 failed to comply with the premises description requirement of Chapter 125 and thus were void under Wis. Stat. § 125.04(2). The Town argues that the premises description in each license did not comply with Wis. Stat. § 125.26(3) and Wis. Stat. § 125.51(3)(d). These statutes require that Class "B" and "Class B" licenses "particularly describe the premises for which issued." Wis. Stat. §§ 125.26(3), 125.51(3)(d).

¶ 30.   In determining what "premises" means in Chapter 125, we are expected to look at the context in which the term is used throughout the chapter. *Klemm v. Am. Transmission Co., LLC,* 2011 WI 37, ¶ 18, 333 Wis. 2d 580, 798 N.W.2d 223; *Village of Lannon v. Wood-Land Contractors, Inc.,* 2003 WI 150, ¶ 13, 267 Wis. 2d 158, 672 N.W.2d 275.

¶ 31.   Wisconsin Stat. § 125.02(14m) defines "premises" to mean "the area described in a license or permit." The only limitation on "premises" in this definition is the "area" limitation that appears in the license or permit.

¶ 32.   Wisconsin Stat. § 125.04(3)(a) directs the Department of Revenue to "prepare an application form

for each kind of [alcohol beverages] license" and require information from the applicant of "3. The *premises* where alcohol beverages will be sold or stored or both." (Emphasis added.)

¶ 33.  The forms for a Class "B" and a "Class B" license make the required request for a "Premises" description. The form instructs: "Describe building or buildings where alcohol beverages are to be sold or stored. The applicant must include all rooms including living quarters, if used, for the sales, service, and/or storage of alcohol beverages and records. (Alcohol beverages may be sold and stored only on the premises described.)."

¶ 34.  The answers provided on the form by an applicant may be used by the licensing authority to comply with Wis. Stat. §§ 125.26(3) and 125.51(3)(d) which require the licenses to "particularly describe the premises for which issued."

¶ 35.  In every instance, the applications from Wisconsin Dolls listed buildings and all "8 acres" of the resort. This signified that the applicant wanted all eight acres to be designated as "the premises" where alcohol beverages could be sold or stored or both. The Town did not have to approve such a broad a description of the premises, but it did.

¶ 36.  In voiding the licenses, the court of appeals effectively ruled that the Town could not have granted licenses with a premises description that broad, even if it wished to do so. The court of appeals said:

> "[P]articularly describe the premises" means that the license must contain sufficient detail to identify the specific areas where the alcohol beverages will be sold or stored or both. We conclude that merely identifying the total amount of acreage of the licensee's property

does not fulfill this definition. It does not identify the specific area or areas in the total acreage where the licensed activity will occur.

*Wis. Dolls, LLC,* 337 Wis. 2d 431, ¶ 20.

¶ 37. We are not persuaded. Wisconsin Stat. §§ 125.272 and 125.51(6) *require* most sales with Class "B" or "Class B" licenses to be face-to-face sales to consumers. A broad premises description permits face-to-face retail sales throughout the entire eight acres of the resort and also permits consumption of the alcohol beverages throughout the entire eight acres of the resort. No municipality is required to permit this activity in such a broad area, but we do not see in Chapter 125 any statute in which the legislature has prohibited it.

¶ 38. Licensed premises, as described elsewhere in Chapter 125, appear to refer to more than the point of sale. *E.g.,* Wis. Stat. § 125.07(3)(a). The licensed premises, with respect to a "Class B" intoxicating liquor license under Wis. Stat. § 125.51, may be co-extensive with the premises where consumption may occur. Wis. Stat. § 125.51(3)(a); *see also* Wis. Stat. § 125.51(3)(am) and (b). Thus, the premises to be listed on a "Class B" license are not necessarily confined to the dimensions of a bar room or storage room.

¶ 39. Here the Town chose to license the entire eight acres of the resort as the premises for the sale (and also the consumption) of fermented malt beverages and intoxicating liquor. The Town made that choice.

¶ 40. Clearly, the legislature has never required that alcohol beverages be sold or consumed only in buildings. The license posting requirement in Wis. Stat.

§ 125.04(10)(b) applies to gigantic indoor and outdoor venues as well as small corner taverns. We suspect that most people would not be able to identify where the alcohol beverages license is posted at Lambeau Field or Camp Randall Stadium. Thus, the posting requirement cannot be used to limit the area of the described premises. A municipality has authority to limit the area of the premises when it grants a license.

¶ 41.   In sum, the original license granted to Wisconsin Dolls was not void due to an insufficient description of the premises.

B.   Did the Town Have the Authority to Modify the Premises Description in an Alcohol Beverages License upon Renewal Without the Consent of the Licensee?

¶ 42.   We now turn to the specific question of the authority of a town[6] to unilaterally modify the premises description in an alcohol beverages license upon renewal of that license. Wisconsin Dolls makes due process arguments concerning the modification of an alcohol beverages license under Chapter 125—claiming that when the Town modified the license by reducing the described premises from the entire property to only the main bar area, the Town stripped Wisconsin Dolls of property rights without due process of law. The Town makes several arguments in response.

¶ 43.   We address the question solely as a matter of statutory interpretation. The procedures concerning alcohol beverages licenses are provided in Chapter 125.

[6] We refer in this opinion to the authority of towns under Chapter 125. Chapter 125 does not distinguish among cities, villages, and towns with respect to renewal of alcohol beverages licenses. We do not need to determine whether other statutes might change the result for cities or villages.

366

Chapter 125 does not provide towns, except as discussed below, the authority to modify licenses upon renewal. Thus, the Town had no authority to modify the license in the way it did. Because the Town was without authority, we do not consider due process arguments.

¶ 44. At the outset of our analysis, we note that "[T]owns have no home rule powers but only those powers specifically delegated to them by the legislature or necessarily implied therefrom." *Danielson v. City of Sun Prairie,* 2000 WI App 227, ¶ 13, 239 Wis. 2d 178, 619 N.W.2d 108 (citing *Pugnier v. Ramharter,* 275 Wis. 70, 73, 81 N.W.2d 38 (1957)). Therefore, in the context of the comprehensive scheme provided by Chapter 125, we look for a statute providing support for the Town's right to modify an alcohol beverages license upon renewal. The parties do not direct us to such a statute. Without such a statute, the Town does not have authority to modify the premises description in an alcohol beverages license upon renewal.

¶ 45. Chapter 125 of the statutes provides provisions regarding license application, Wis. Stat. § 125.04(3), license issuance, *e.g.,* Wis. Stat. §§ 125.26, 125.51, and license nonrenewal, suspension, or revocation, Wis. Stat. § 125.12. The parties do not direct us to a provision in Chapter 125 that provides towns with the authority to unilaterally modify the description of the licensed premises upon renewal. We know that a licensee may not unilaterally enlarge the size of its premises. *Alberti v. City of Whitewater,* 109 Wis. 2d 592, 601, 327 N.W.2d 150 (Ct. App. 1982) (holding that a licensee cannot unilaterally expand an existing licensed premises to include additional previously undescribed,

unlicensed area). We do not see that a town may unilaterally reduce the area of the premises described in the alcohol beverages license.

¶ 46. Under Chapter 125, towns may grant licenses. *E.g.*, Wis. Stat. § 125.02(9). They must renew those licenses, if the proper application is made and the fees are paid, unless they revoke, suspend, or non-renew the licenses, following the procedures outlined in Wis. Stat. § 125.12.

¶ 47. Wisconsin Stat. § 125.12 provides remedies for a town (or its residents) when a licensee *violates* Chapter 125 or a pertinent local ordinance. Any resident of a town may complain regarding a licensee that has violated Chapter 125 or a regulation adopted by that town. *See* Wis. Stat. § 125.12(2)(ag). Such a complaint commences an action that can result in license revocation. However, § 125.12 provides certain procedural protections for licensees or license applicants when a town chooses to revoke or non-renew, or refuses to issue a license. These protections include an adversarial hearing. Wis. Stat. § 125.12(2)(b).

¶ 48. In addition, towns have broad authority to "prescribe additional regulations for the sale of alcohol beverages, not in conflict with" Chapter 125 of the statutes. Wis. Stat. § 125.10(1). The legislature also provided that "[r]egulations providing forfeitures or license suspension or revocation must be adopted by ordinance." *Id.* The Town suggested here that the fluid process of alcohol regulation in this state, and this section of the statutes in particular, allowed it to modify licenses upon renewal. We disagree. While towns can regulate alcohol beverages as provided by the statute, § 125.10(1) does not give towns the authority to unilaterally modify the described premises in an individual license upon renewal of that license.

¶ 49. In short, a town must either pass a regulation or an ordinance under Wis. Stat. § 125.10 or it must find grounds for revocation or nonrenewal under Wis. Stat. § 125.12.[7]

¶ 50. If a town were able to establish violations by a licensee under Wis. Stat. § 125.12(2)(ag), the town might accommodate the licensee by allowing the licensee to apply for a transfer of the license to a new (reduced) premises description under Wis. Stat. § 125.04(12)(a), rather than face the penalty of nonrenewal. The modification of the premises description might facilitate compliance with Chapter 125.

¶ 51. It is not unrealistic that a town might negotiate with a licensee to address public concerns[8] about the premises description and obtain consent to a modification. As the court of appeals recognized in *Alberti,* a change in the premises description in an alcohol beverages license "is analogous to a request for a transfer from one premises to another." *Alberti,* 109 Wis. 2d at 595. Towns might use the statutory authority in the license transfer statute, Wis. Stat. § 125.12(a), to come to a mutually-agreeable resolution. Licensees certainly could have motivation to negotiate with towns. In this case the Town alleged that the license did not conform to Chapter 125 in its premises description and also alleged that the Town was aware that a juice bar had been built by Wisconsin Dolls that served patrons under

_____

[7] Municipalities do not have unlimited power to regulate via Wis. Stat. § 125.10. Ordinances must meet certain requirements. *Town of Hobart v. Collier,* 3 Wis. 2d 182, 87 N.W.2d 868 (1958). In this case, the Town might face other obstacles in attempting to regulate a business such as Wisconsin Dolls under Wis. Stat. § 125.10. *See Lounge Mgmt. v. Town of Trenton,* 219 Wis. 2d 13, 580 N.W.2d 156 (1998).

[8] *Cf. Eichenseer v. Madison-Dane Cnty. Tavern League,* 2008 WI 38, ¶ 9, 308 Wis. 2d 684, 748 N.W.2d 154.

the legal drinking age.[9] If the latter allegation were true, the licensee might be in violation of Chapter 125. In the event that a violation of Chapter 125 existed, a municipality and a licensee would want to address that problem lest revocation or suspension proceedings be commenced by a resident of the municipality or the Department of Revenue. *See* Wis. Stat. § 125.12(2)(ag) & (4)(ag).

¶ 52. When there is no finding of misconduct or violation, however, there is no authority to unilaterally alter the premises description of a specific license. Here the Town board chairman stated explicitly, at least with respect to serving alcohol to underage individuals, "there has not been many problems that I am aware of, of serving minors around the rest of the property over there." This was confirmed by the Town in oral argument. The circuit court found that *no grounds existed for nonrenewal* under Wis. Stat. § 125.12(3) and (2)(ag). We see no reason why our interpretation of the statutes is at odds with a statewide system complemented by local regulation.

¶ 53. The Town asserts that its action in this case was not arbitrary. We make no suggestion that the Town was acting in bad faith. We have no reason to

---

[9] The Town did not specify how the information was obtained regarding where alcohol was served. At oral argument, the Town suggested that the fact-finding process occurred based on personal knowledge of the location, i.e., driving past the resort. While this fact-finding process underscores the benefit of an adversarial hearing, it is not the basis for our decision.

We note that information regarding a juice bar was not new. A handwritten note on Wisconsin Dolls' initial Adult-Oriented Establishment license application dated December 31, 2004, states "*Aspects of business include . . . 18 [year old] Juice Bar without Alcohol."

doubt the sincerity of the statement made by counsel for the Town in oral argument: "The Town board, I can tell you, doesn't give a wit about [Wisconsin Dolls] being a strip club." Rather, counsel argued, the Town is interested only in overseeing any expansion of Wisconsin Dolls' service area for alcohol beverages. But the issue before us is not the Town's good faith. The issue is the Town's authority—and any town's authority—to unilaterally alter the premises description of an alcohol beverages license without cause and without compliance with established statutory procedure.

¶ 54. We are not unsympathetic to the Town's concern that Wisconsin Dolls, under this interpretation, could construct many new buildings on its premises and serve alcohol in each of them without filing an application for a "new" license under Chapter 125. While that may be true, the town should have considered that possibility when granting an initial license. The Town granted a license that provided Wisconsin Dolls authority to sell alcohol beverages and consume alcohol beverages on the entire resort property. Thus, if Wisconsin Dolls were to sell or allow consumption at more than the bar area, that would be within the license granted; it would not be an area expansion unilaterally undertaken by the licensee. The Town may have other means to govern a proliferation of buildings.[10]

¶ 55. If this decision causes towns to carefully consider what conditions they attach to licenses when those licenses are issued, that result appears to mesh

---

[10] This opinion refers only to the effect of expansion on the alcohol beverages license. Other ordinances might affect the extent to which Wisconsin Dolls can expand its facilities or maintain its operational licenses.

with the purpose of Chapter 125 and the system of local regulation that the chapter permits. *See* Wis. Stat. § 125.04(2).

¶ 56. In short, towns and potential licensees are well-advised to work out these issues at the time of original license application, rather than to deal with them later.

## V. CONCLUSION

¶ 57. We reverse the decision of the court of appeals. First, the original licenses granted to Wisconsin Dolls were not void due to an insufficient description of the premises. Wisconsin Dolls asked for licenses that would cover the entire eight acres of the resort, and the original license explicitly covered the entire eight acres of the resort. Second, the Town of Dell Prairie exceeded its authority when it modified the description of the premises in renewing Wisconsin Dolls' alcohol beverages license. Towns may attach conditions to an alcohol beverages license, including limitations to the described premises, when the license is *initially* granted. If a town later wishes to modify the premises described in the license, especially a modification that disadvantages the licensee, it must pass a valid regulation or ordinance under Wis. Stat. § 125.10(1), follow the procedures outlined in Wis. Stat. § 125.12, or negotiate the consent of the licensee. A town is not permitted to unilaterally reduce the description of the premises when it renews an alcohol beverages license. The Town here did not proceed on a correct theory of law, and thus its modification of the license cannot be sustained.

¶ 58. We reverse the decision of the court of appeals and remand the case to the circuit court to

order the Town to restore the "all 8 acres of the resort" premises description to Wisconsin Dolls' former and current alcohol beverages licenses.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion.